PHILLIP A. TALBERT
United States Attorney
JOSEPH D. BARTON
JEFFREY A. SPIVAK
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

FILED
Oct 27, 2022
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

SEALED

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 1:22-cr-00287-A DA-BAM |
| Plaintiff, | 18 U.S.C. § 1343 – Wire Fraud (Five Counts); 18 U.S.C. § 1957 – Money Laundering (One Count); 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 28 U.S.C. § 2461(c) – Criminal Forfeiture |
| v. | |
| ROYCE NEWCOMB, | |
| Defendant. | |

# INDICTMENT

<u>COUNTS ONE THROUGH THREE</u>: [18 U.S.C. § 1343 – Wire Fraud]

The Grand Jury charges:

ROYCE NEWCOMB,

defendant herein, as follows:

**I. INTRODUCTION**

1. At all relevant times, defendant ROYCE NEWCOMB was a resident of Fresno County, State and Eastern District of California.

2. At all relevant times, defendant NEWCOMB owned and operated a company called Strategic Innovations LLC ("Strategic Innovations"). Strategic Innovations had its principal place of business in Fresno County, State and Eastern District of California.

INDICTMENT

1

## II. SCHEME TO DEFRAUD STRATEGIC INNOVATIONS INVESTORS

3. Beginning on a date unknown to the Grand Jury, but no later than in or around February 2017, and continuing through until at least in or around October 2022, in Fresno County, State and Eastern District of California, and elsewhere, defendant NEWCOMB intended to devise, devised, participated in, and executed a material scheme to defraud investors, and to obtain money and property from the investors, by means of materially false representations, promises, and pretenses.

## III. MANNER AND MEANS

4. Defendant NEWCOMB carried out his scheme to defraud by using the following manner and means, among others:

5. Defendant NEWCOMB purported that Strategic Innovations would develop and make smart home and business products meant to stop package theft and prevent weather damage to packages, and to make it easier for delivery services and emergency responders to find homes and businesses. Defendant NEWCOMB solicited investors to invest in Strategic Innovations based on his false representations concerning Strategic Innovations' business operations and products. He falsely claimed that investor funds would be used for Strategic Innovations to develop and produce products including a smart door, called the eDOR, and a smart address plaque, called the eLIT, among other products.

6. Defendant NEWCOMB created prototypes, and applied for and received patents and trademarks, for his eDOR, eLIT, and other claimed products. However, defendant NEWCOMB and Strategic Innovations did not make any sales, have any accounts receivable from customers, or otherwise generate any revenues of the eDOR, eLIT, or any other products.

7. Defendant NEWCOMB claimed to potential investors that Strategic Innovations would use investor funds to produce a product called the eDOR, which purportedly had a box in it, called the eBOX, that would recognize package delivery services and automatically open when they came to make a delivery. According to defendant NEWCOMB, after a package was put into an eBOX, the box would automatically close and could only be reopened by the user. Defendant NEWCOMB falsely represented that Strategic Innovations would produce upgrades for the eDOR, such as a smart latch, called the eTETHR. The eTETHR was purportedly for packages that were too large to fit into an eBOX and would secure packages attached to the eTETHR. Defendant NEWCOMB represented that an alarm

would go off if the package was disconnected from the eTETHR by someone other than the user.

8. Defendant NEWCOMB also falsely claimed to potential investors that Strategic Innovations would use investor funds to produce the eLIT product, which purportedly had LED lights in it that made homes and businesses' addresses more visible from the street. Defendant NEWCOMB represented that the eLIT would automatically flash white if a delivery was expected and would flash red if emergency services had been called. Defendant NEWCOMB also represented that, if an address was incorrectly entered into Google Maps and similar internet applications, the eLIT would automatically correct the location.

9. Defendant NEWCOMB solicited investors to invest in Strategic Innovations in various ways, including through product demonstrations, interviews with and submitting product information to the media, and referrals from family, friends, and other investors.

10. Defendant NEWCOMB falsely represented to investors, including investors A.H., E.B., T.P., J.M., and L.L., that he had secured large amounts of funding, including a large monetary grant from the National Science Foundation ("NSF"). He also falsely represented to investors that he would use their money to further develop and bring his products to market, and that he would pay investors significant returns in as little as three months.

11. Defendant NEWCOMB made his false representations to investors by various methods, including physical and virtual meetings, calls, text messages, and emails, as well as through written documents, such as prospectuses, investor agreements, and use of funds charts.

12. Defendant NEWCOMB did not apply for, or receive, any grants from the NSF or use investors' money as he had promised to them. Instead, defendant NEWCOMB used investor money to pay for his own personal expenses, including gambling, frequent travel, luxury vehicles, and a down payment on a personal home. Defendant NEWCOMB also used investor money to pay refunds to other investors to avoid or settle disputes with them. Finally, he used investor money to pay for new, unrelated projects. The investors did not authorize defendant NEWCOMB to use their investment funds for defendant NEWCOMB's personal expenses or for these other unauthorized purposes.

13. When defendant NEWCOMB's investors asked him about the delays in developing his products and paying returns, defendant NEWCOMB provided them with inconsistent, conflicting

explanations and excuses concerning the lack of returns on their investments, such as that there had been product design flaws, software problems, or supply chain issues. Defendant NEWCOMB also reassured investors that their money was going towards product development and that he would pay them significant returns soon. In fact, he knew that he had improperly used investors' money to pay for personal expenses, refunds to other investors, and new, unrelated projects, and that no returns were being generated. This allowed defendant NEWCOMB to continue with his scheme to defraud the investors and to delay the discovery of his scheme.

14. The false representations, promises, and pretenses that defendant NEWCOMB made to investors were material to them. Investors may decline investment in a business if the business has not secured other sources of funding, if their investment is not going to be used for the intended investment purposes, and if there is no likelihood of significant returns.

15. At all relevant times, defendant NEWCOMB acted with the intent to defraud. His scheme to defraud caused investors to incur over $4,000,000 in losses.

### IV. INTERSTATE WIRE TRANSMISSIONS

16. On or about the dates set forth below, in the State and Eastern District of California, and elsewhere, for the purpose of executing his scheme to defraud, defendant NEWCOMB knowingly transmitted and caused to be transmitted, by means of wire and radio communication in interstate commerce, the following writings, signs, signals, pictures and sounds:

| Count | Date | Description |
| --- | --- | --- |
| ONE | 7/16/19 | Wire transmission of monies in the amount of $100,000, originating from investor A.H.'s bank account at Fresno First Bank, in Fresno County, State and Eastern District of California, and sent to defendant NEWCOMB's Strategic Innovations bank account ending – 5115 at Bank of America, that was processed interstate through the Federal Reserve Bank's Wire Transfer Network ("Fedwire"). |
| TWO | 8/6/19 | Wire transmission of monies in the amount of $100,000, on behalf of investor E.B., originating from investor A.H.'s bank account at Fresno First Bank, in Fresno County, State and Eastern District of California, and sent to defendant NEWCOMB's Strategic Innovations bank account ending – 5115 at Bank of America, that was processed interstate through Fedwire. |

INDICTMENT 4

| THREE | 5/12/21 | Wire transmission of monies in the amount of $100,000, on behalf of investor T.P., originating from investor A.H.'s bank account at Fresno First Bank, opened in Fresno County, State and Eastern District of California, and sent to defendant NEWCOMB's Strategic Innovations bank account ending – 7097 at Bank of the West, in Fresno County, State and Eastern District of California, that was processed interstate through Fedwire. |
|---|---|---|

All in violation of Title 18, United States Code, Section 1343.

COUNT FOUR: [18 U.S.C. § 1343 – Wire Fraud]

The Grand Jury further charges:

ROYCE NEWCOMB,

defendant herein, as follows:

17. Paragraphs 1 through 2 inclusive are hereby incorporated by reference as though fully set forth herein.

### I. BACKGROUND ON THE SMALL BUSINESS ADMINISTRATION'S ECONOMIC INJURY AND DISASTER LOAN PROGRAM

18. The United States Small Business Administration's ("SBA") Economic Injury Disaster Loan ("EIDL") Program provides temporary financial assistance from the federal government to small businesses, in regions affected by declared disasters, that lost revenues because of the disasters.

19. Beginning in March 2020, federal legislation was enacted to allow small businesses that lost revenues because of the COVID-19 pandemic to apply for and receive EIDLs. Overall, more than $200 billion in federal funds have been appropriated for EIDLs during the pandemic.

20. Individuals generally apply to the SBA for an EIDL by submitting an application online. The individual is asked in the online application to describe his business and answer questions to determine the amount of the loan for which the business is eligible. The amount of the loan is determined by the business' annual gross profits, which is calculated by taking its gross revenues and subtracting its cost of goods sold. The SBA requires that an applicant for an EIDL accurately represent his business' revenues and cost of goods sold because inaccurate representations may result in the business being loaned a larger amount of money than the amount for which it is eligible.

21. EIDL applications submitted from the western United States prior to July 2020 were processed through an SBA computer server in Washington state. EIDL applications submitted from

INDICTMENT 5

Fresno County, California, prior to July 2020 were accordingly processed interstate.

## II. SCHEME TO DEFRAUD SBA

22. Beginning in or around April 2020, and continuing through until in or around June 2020, in Fresno County, State and Eastern District of California, and elsewhere, defendant NEWCOMB intended to devise, devised, participated in, and executed a material scheme to defraud the SBA and United States, and to obtain money and property from the SBA and United States, by means of materially false representations, promises, and pretenses.

## III. MANNER AND MEANS

23. Defendant NEWCOMB carried out his scheme to defraud by using the following manner and means, among others:

24. Defendant NEWCOMB caused an EIDL application to be submitted to the SBA online in which he falsely represented that, over the prior twelve months, Strategic Innovations had generated $150,000 in annual gross profits, which consisted of $600,000 in revenues and $450,000 in cost of goods sold. He knew that Strategic Innovations had not actually generated any gross profits because it did not have any gross revenues or cost of goods sold, and that his representations to the contrary were false when he made them to the SBA.

25. The false representations that defendant NEWCOMB made to the SBA were material to the agency's decision to approve and fund his EIDL. The SBA may loan a lesser amount of money, or no money at all, if an individual's business did not generate any gross profits.

26. At all relevant times, defendant NEWCOMB acted with the intent to defraud and his misconduct caused the SBA and United States to incur over $72,000 in losses.

## IV. INTERSTATE WIRE TRANSMISSION

27. On or about the date set forth below, in the State and Eastern District of California, and elsewhere, for the purpose of executing his scheme to defraud, defendant NEWCOMB knowingly

///
///
///
///

caused to be transmitted, by means of wire and radio communication in interstate commerce the following writings, signs, signals, pictures and sounds:

| Count | Date | Description |
|---|---|---|
| THREE | 4/13/20 | Application for an EIDL of $72,000, sent electronically from Fresno County, State and Eastern District of California, and processed by an SBA computer server in Washington state. |

All in violation of Title 18, United States Code, Section 1343.

COUNT FOUR: [18 U.S.C. § 1343 – Wire Fraud]

The Grand Jury further charges:

ROYCE NEWCOMB,

defendant herein, as follows:

28. Paragraphs 1 through 2 inclusive are hereby incorporated by reference as though fully set forth herein.

### I. BACKGROUND ON PRIVATE LENDER LOANS

29. Generally speaking, private lenders make loans to people and businesses that are struggling financially and are unable to obtain traditional loans from banks or other conventional sources. The private loans are made at higher-than-normal interest rates to account for the increased risk of lending to these people and businesses.

30. A common source of security for such private loans to businesses are the businesses' accounts receivable from customers. The terms of the loans from the private lenders typically provide that, if the businesses default on the loans, the private lenders have a right to collect against the businesses' accounts receivable up to a certain negotiated amount.

### II. SCHEME TO DEFRAUD PRIVATE LENDERS

31. Beginning in or around October 2021, and continuing through until in or around December 2021, in Fresno County, State and Eastern District of California, and elsewhere, defendant NEWCOMB intended to devise, devised, participated in, and executed a material scheme to defraud private lenders, including PRIVATE LENDER ONE, and to obtain money and property from these lenders, by means of materially false representations, promises, and pretenses.

### III. MANNER AND MEANS

32. Defendant NEWCOMB carried out his scheme to defraud by using the following manner and means, among others:

33. Defendant NEWCOMB caused loans applications to be submitted to private lenders, including PRIVATE LENDER ONE, where he falsely represented that Strategic Innovations had millions of dollars in accounts receivable from customers. He knew that Strategic Innovations had not actually made any sales and did not have any accounts receivable, and that these representations were false when he made them to the lenders.

34. The false representations that defendant NEWCOMB made to the private lenders were material to their decisions to approve his loan applications because the representations concerned the availability of accounts receivable as the security for the loans in the event of default. The private lenders may deny a business' loan application if it does not have any accounts receivable.

35. At all relevant times, defendant NEWCOMB acted with the intent to defraud. Through his scheme to defraud, defendant NEWCOMB caused private lenders to incur over $190,000 in losses.

### IV. INTERSTATE WIRE TRANSMISSIONS

36. On or about the dates set forth below, in the State and Eastern District of California, and elsewhere, for the purpose of executing his scheme to defraud, defendant NEWCOMB knowingly transmitted and caused to be transmitted, by means of wire and radio communication in interstate commerce, including to and from the State and Eastern District of California, the following writings, signs, signals, pictures and sounds:

| Count | Date | Description |
| --- | --- | --- |
| FIVE | 12/8/21 | Wire transmission of monies in the amount of $47,500, originating from the bank account of PRIVATE LENDER ONE and sent to defendant NEWCOMB's Strategic Innovations bank account ending – 7097 at Bank of the West in Fresno County, State and Eastern District of California, that was processed interstate through Fedwire. |

All in violation of Title 18, United States Code, Section 1343.

///
///
///

INDICTMENT 8

COUNT SIX: [18 U.S.C. § 1957 – Money Laundering]

The Grand Jury further charges:

ROYCE NEWCOMB,

defendant herein, as follows:

37. Paragraphs 1 through 16 inclusive are hereby incorporated by reference as if fully set forth herein.

38. On the dates set forth below, in Fresno County, State and Eastern District of California, and elsewhere, defendant NEWCOMB did knowingly engage in monetary transactions by, through, and to financial institutions, affecting interstate commerce, in criminally derived property that was of a value greater than $10,000, that is the withdrawal and transfer of money, as more fully set forth below, such property having been derived from a specified unlawful activity, to wit: wire fraud in violation of Title 18, United States Code, Section 1343 as follows:

| Count | Date | Monetary Transaction |
|---|---|---|
| SIX | 11/2/21 | Cashier's check for $70,000.00 drawn from defendant NEWCOMB's Strategic Innovations bank account ending – 7097 at Bank of the West in Fresno County, State and Eastern District of California. |

All in violation of Title 18, United States Code, Section 1957.

FORFEITURE ALLEGATION: [18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(1) - Criminal Forfeiture]

1. Upon conviction of one or more of the offenses alleged in Counts One through Five of this Indictment, defendant NEWCOMB shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable to such violations, including, but not limited to:

a. A sum of money equal to the amount of proceeds traceable to such offenses, for which defendant is convicted.

2. Upon conviction of one or more of the offenses alleged in Count Six of this Indictment, defendant NEWCOMB shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), all property, real or personal, involved in such offenses, and any property traceable to such property, including but not limited to the following:

a. A sum of money equal to the amount of money involved in the offenses, for which defendant is convicted.

   3. If any property subject to forfeiture as a result of the offenses alleged in Counts One through Six of this Indictment, for which defendant is convicted:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(b)(1), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant, up to the value of the property subject to forfeiture.

A TRUE BILL.

/s/ Signature on file w/AUSA
_____
FOREPERSON

PHILLIP A. TALBERT
United States Attorney

**KIRK E. SHERRIFF**
_____
KIRK E. SHERRIFF,
Assistant United States Attorney,
Chief, Fresno Office